So Ordered.

Dated: March 31, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Craig A. Pope and Cathleen A. Pope,                 Case No. 20-22889-GMH
                                                                        Chapter 11
        Debtors in possession.

## DECISION AND ORDER

Craig and Cathleen Pope employed Krekeler Strother S.C. as attorneys to represent them in carrying out their duties as the debtors in possession in this case under chapter 11 of the Bankruptcy Code. See 11 U.S.C. §327(a). Although the court approved this employment after no one objected to it, the United States trustee now contends that the court should disqualify the firm because it is not "disinterested" as required by §327(a) and it failed to disclose all of its "connections with the debtor[s], creditors, [and] any other part[ies] in interest" as required by Federal Rule of Bankruptcy Procedure 2014(a). The United States trustee also requests that the court order Krekeler Strother to disgorge fees paid, deny any request for approval of fees or expenses incurred by Krekeler Strother during this case, and require Krekeler Strother to provide the United States trustee with an accounting of estate funds. For the

following reasons, the court denies the request to disqualify the firm but grants some of the alternative relief the United States trustee requests.

I

A

Craig and Cathleen Pope commenced this chapter 11 case on April 16, 2020. That same day they filed an application for employment of Kristin J. Sederholm and Krekeler Strother, her firm, "as counsel for the Debtors pursuant to 11 U.S.C. §§ 327(a), 328(a), 331 and 1103(a) and Fed. R. Bankr. P. 2014 and 2016." ECF No. 4, at 1. The application describes the debtors' engagement of the firm in 2015 and the firm's representation of the debtors in connection with a sale of real property to avoid a tax foreclosure, stating:

> The Debtors retained Krekeler Strother on December 1, 2015, and paid to Krekeler Strother an initial retainer of $1,000. Krekeler Strother represented the Debtors in determining what remedies were available to avoid seizure of real estate by Walworth County Treasurer, filed a Chapter 13 Bankruptcy for the Debtor [Mr. Pope] with this Court on May 13, 2019, as Case No. 19-24703 and represented the Debtor during that case, and prepared all documents related to the sale of real estate of the Debtor via a Land Contract transaction.

*Id.* at 4, ¶16.

The application further states that, having paid Krekeler Strother about $60 thousand in prepetition fees and costs and about $2 thousand for filing this case, the debtors did not owe Krekeler Strother anything more, and that Krekeler Strother was holding about $89 thousand in its trust account for postpetition fees and expenses:

> Prior to the Petition Date, the Debtors paid Krekeler Strother the total amount of $59,718.51 for attorneys' fees earned for services rendered and costs incurred by Krekeler Strother and an additional $1,717.00 for the filing fee for this Case. At the time of the filing of this Case, Krekeler Strother was not owed any monies. As of the date of this Application, the sum of $88,966.01 is currently being held in the Firm's trust account for

post-petition services and expenses to be approved by the Court as required under the Bankruptcy Code.

*Id.*

Ms. Sederholm provided an affidavit in support of the application to employ her and her firm, explaining that one of the reasons why "[t]he Debtors chose Krekeler Strother" was "the Firm's prior legal representation of the Debtors." *Id.* at 6, ¶3. The affidavit provides no additional information about that representation, however. The affidavit then fully disclaims any connections between the firm, including its owners and employees, and the debtors, creditors, and other parties in interest and any interests of the firm, its attorneys, and its clients adverse to the debtors or the estate:

> After due and diligent inquiry and reasonable investigation, Krekeler Strother has concluded that neither Krekeler Strother, nor any shareholder, counsel, associate or paralegal of Krekeler Strother has any connections with the Debtors, their creditors, or any parties[ in ]interest, or their respective attorneys and accountants, or the United States Trustee, or any person employed by the United States.
>
> . . . .
>
> Based upon the foregoing disclosures and due diligence, I have concluded that neither Krekeler Strother, nor any shareholder or associate of Krekeler Strother, holds or represents any interest adverse to the Debtors or the Debtors' estate with respect to the matters upon which Krekeler Strother proposes to be employed.

*Id.* at 7, ¶¶6 & 8.

No one objected to the application. For that reason and because the application and the supporting affidavit suggested that the firm satisfied the requirements of §327(a) the court approved the employment without a hearing.[1]

---

[1] About six weeks later the debtors filed an application to employ Mayville LaRosa, another of Krekeler Strother's attorneys, "as their tax preparer". ECF No. 45, at 2, ¶5. Ms. Sederholm signed the application,

B

On December 8, 2020, the United States trustee moved to disqualify Krekeler Strother as attorneys employed to represent the debtors in possession, principally arguing that the firm failed "to disclose connections, compensation arrangements, and possible adverse [interests] and conflicts of interest." ECF No. 131, at 1. As the motion explains, and as is now undisputed, the firm failed to disclose that the documents the firm prepared "related to the sale of real estate of [Mr. Pope] via a Land Contract transaction", see ECF No. 4, at 4, ¶16, required that payments by the purchaser be deposited into the firm's trust account and that those funds be used to pay the firm's fees before being distributed to those with liens against the property or Mr. Pope.

In October 2019, about six months before filing the debtors' bankruptcy petition, Krekeler Strother represented Mr. Pope and his wholly owned corporation, C.A. Pope Inc., in the sale of a gas station. Mr. Pope and C.A. Pope Inc. agreed to sell Mobin Ahmad the real property by land contract for $700 thousand, and C.A. Pope Inc. agreed to sell Mr. Ahmad the related personal property by bill of sale for $150 thousand. ECF No. 136-1, at 5 & 9. Mr. Ahmad granted Mr. Pope a security interest in the personal property and agreed to pay Mr. Pope about $53 thousand more "to perform consulting work" as needed. *Id.* at 10–16 & 17. The land contract requires that payments be made "to Craig A. Pope, c/o Krekeler Strohter [sic] SC trust account." *Id.* at 5. The bill of sale similarly requires that payments be made "to C.A. Pope, Inc., c/o Krekeler Strother, SC, to be deposited into the Krekeler Strother, SC trust account". *Id.* at 9. The consulting agreement does not expressly require that payments be made into the firm's trust

which represents, "To the best of the Debtors' knowledge, Krekeler Strother does not hold or represent any interest adverse to the Debtors or their Chapter 11 estate, their creditors, or any other party in interest, and is a 'disinterested person' as that term is defined in [§§]101(14) and 327 of the Bankruptcy Code." *Id.* at 3, ¶10. Ms. LaRosa provided a supporting affidavit that, in language substantially similar to that quoted above, disclaims any material connections and adverse interests of the firm and its owners, employees, and clients. See ECF No. 45, at 6, ¶¶9 & 11. Though unnecessary, see Fed. R. Bankr. P. 2014(b), this application was also unopposed, and the court separately approved Ms. LaRosa's employment.

account but requires that "[a]ll payments received in Krekeler Strother SC trust" be distributed first "to Krekeler Strother" for "fees owed by Craig A. Pope", then to the holders of "liens against th[e] property", and finally "to Vendor", which is not defined in the consulting agreement, but is defined in the land contract as Mr. Pope and C.A. Pope Inc. *Id.* at 5 & 17. The land contract and bill of sale also require distributions from the firm's trust account in that order. *Id.* at 5 & 9.

Mr. Ahmad continued to make payments under the agreements into Krekeler Strother's trust account after the debtors commenced this case, but the debtors did not disclose those payments in their initial monthly operating reports for April through July 2020, which they signed under penalty of perjury. ECF Nos. 41, 51, 52, 57 & 90. In October 2020 the debtors filed amended monthly operating reports for those months, again signed under penalty of perjury, disclosing those payments for the first time. ECF Nos. 103–105 & 107.[2] A week later Ms. Sederholm filed a supplemental affidavit disclosing the payment provisions in the gas-station contract and that the firm was, by then, holding nearly $103 thousand in "land contract payments" in its trust account (up from the $89 thousand previously disclosed as being held in trust when the petition was filed). ECF No. 110, at 1–2, ¶¶3–4; see also ECF No. 124 (representing that, as of November 30, 2020, "the land contract payments held in Krekeler Strother's Trust Account total[ed] $177,435.03").

---

[2] An April 27, 2020 order requires the debtors to file a report for each month by no later than the 21st day of the following month. ECF No. 19, at 3; see Fed. R. Bankr. P. 2015(a)(6) ("Each report shall be filed no later than 21 days after the last day of the calendar month following the month covered by the report."). Nearly all the debtors' monthly operating reports in this case have been late filed. See ECF No. 51 (May 2020 report filed June 23, 2020); ECF No. 57 (June 2020 report filed July 22, 2020); ECF No. 90 (July 2020 report filed September 18, 2020); ECF No. 109 (August 2020 report filed October 21, 2020); ECF No. 114 (September 2020 report filed November 4, 2020); ECF No. 133 (October 2020 report filed December 19, 2020); ECF No. 150 (November 2020 report filed January 29, 2021); ECF No. 152 (December 2020 report filed February 4, 2021); ECF No. 158 (January 2021 report filed March 6, 2021). The debtors' monthly operating report for February 2021, which was due by no later than March 21, 2021, has not been filed.

## II

A chapter 11 debtor in possession has most of the rights and powers and must perform most of the functions and duties of a chapter 11 trustee. 11 U.S.C. §1107(a). Consequently, the employment of counsel by a chapter 11 debtor in possession is governed by §327 of the Bankruptcy Code, subsection (a) of which provides, in relevant part, that "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties". §327(a). "Together, the statutory requirements of disinterestedness and no interest adverse to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

The Code does not specify what constitutes "an interest adverse to the estate". But the Seventh Circuit has construed the term to include "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or "a predisposition under circumstances that render such a bias against the estate." *Id.* at 835 (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985)).

The Code defines "disinterested person" to include "a person that . . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. §101(14)(C). The Seventh Circuit has read §101(14)(C)'s "catch-all clause" (i.e., "for any other reason") as "sufficiently broad to include any professional with an 'interest or relationship that would even faintly color the independence and impartial attitude

required by the Code.'" *Crivello*, 134 F.3d at 835 (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)).

Federal Rule of Bankruptcy Procedure 2014 mandates the process by which a debtor in possession must seek the court's approval to employ attorneys or other professionals. The debtor in possession must file an application for employment. The application must "state the specific facts showing", among other things, "any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [and] any other party in interest". Fed. R. Bankr. P. 2014(a). The application also must "be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, [and] any other party in interest". *Id.*

The Seventh Circuit has directed, "The disclosure requirements [of Rule 2014(a)] apply to all professionals and are not discretionary. The professionals 'cannot pick and choose which connections are irrelevant or trivial.'" *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999) (quoting *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992)). "The 'connections' that must be disclosed are '"considerably broader" than the disclosures required for section 327(a).'" *In re Rental Sys., L.L.C.*, 511 B.R. 882, 894 (Bankr. N.D. Ill. 2014) (quoting *In re Knight-Celotex, LLC*, 695 F.3d 714, 722 (7th Cir. 2012)). The Rule 2014 disclosures, this court has previously explained, must be "full, candid, and complete". *In re Tomczak*, 283 B.R. 730, 734 (Bankr. E.D. Wis. 2002). "Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)).

Compliance with Rule 2014's disclosure requirements, moreover, is not excused by disclosure elsewhere in the record or to the United States trustee. *In re Gluth Bros. Const., Inc.*, 459 B.R. 351, 364 (Bankr. N.D. Ill. 2011) ("It is not sufficient that connections are disclosed in other pleadings, such as a statement of financial affairs, or at a 341

meeting."). And "there is an ongoing obligation to supplement the disclosure if the applicant later learns of undisclosed connections or conflicts later arise." *Id.*; see also *Tomczak*, 283 B.R. at 735 ("Full disclosure is a continuing responsibility on the part of the professional employed by the trustee."). These principles follow from Rule 2014's disclosure requirement, which "goes to the heart of the integrity of the administration of the bankruptcy estate." *Gellene*, 182 F.3d at 588 ("The Code reflects Congress' concern that any person who might possess or assert an interest or have a predisposition that would reduce the value of the estate or delay its administration ought not have a professional relationship with the estate.").

Failing to disclose all connections required by Rule 2014 risks disqualification and denial of compensation: "[C]ounsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *Crivello*, 134 F.3d at 836. When the debtor or the debtor's attorney violates Rule 2014's disclosure requirement, however, "whether to impose a penalty and the nature and extent of the penalty is generally a matter left to the bankruptcy court's discretion." *Miller Buckfire & Co., LLC v. Citation Corp. (In re Citation Corp.)*, 493 F.3d 1313, 1321–22 (11th Cir. 2007).

## III

The United States trustee moves to disqualify Krekeler Strother on the grounds that the firm is employed in contravention of §327(a) because it is not disinterested and that the firm failed to properly disclose its connections as required by Rule 2014(a).

## A

In arguing that Krekeler Strother is not disinterested, the United States trustee points to the "catch-all clause" of the Code's definition of "disinterested person". See §101(14)(C) ("The term 'disinterested person'" includes "a person that . . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders" for any of the reasons specified or "for any other reason."). As

quoted above, the Seventh Circuit's broad construction of this catch-all clause in *Crivello* marks as insufficiently disinterested "any professional with an 'interest or relationship that would even faintly color the independence and impartial attitude required by the Code.'" 134 F.3d at 835 (quoting *BH & P*, 949 F.2d at 1308).

When the debtors commenced this case and sought to employ Krekeler Strother, the firm had recently drafted a series of transactional documents for one of the debtors and his wholly owned corporation that (1) directed ongoing income of the debtor to an account that the firm controlled and (2) required funds in that account to be applied to pay the firm's fees before distribution to any of the debtor's creditors or to the debtor himself. This easily falls within *Crivello*'s construction of §101(14)(C)'s catch-all clause.

Krekeler Strother first asks the court to ignore *Crivello*'s construction of §101(14)(C) because *Crivello* is based on *BH & P*, a Third Circuit case, and Krekeler Strother argues that "since [*Crivello*], the Third Circuit has clarified *BH & P* in a manner inconsistent with the Seventh Circuit's interpretation of the catch-all clause." ECF No. 136, at 9. Purporting to quote a more-recent decision of the Third Circuit, Krekeler Strother asserts that, under that court's clarified standard, §327(a) permits a firm's disqualification only "based on an actual conflict." *Id.* In fact, in the case Krekeler Strother cites, the Third Circuit held that §327(a) permits a firm's disqualification only based on "an actual *or potential* conflict of interest." *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 477 (3d Cir. 1998) (emphasis added). Either way, the point is an academic one. This court is in the Seventh Circuit, not the Third Circuit. Therefore, this court must adhere to the precedent applicable in the Seventh Circuit, including *Crivello*. See *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993) ("Ours is a hierarchical judiciary, and judges of inferior courts must carry out decisions they believe mistaken.").

Whether *Crivello*'s construction of §101(14)(C) ought to be revisited, and whether this court should not have approved Krekeler Strother's employment under *Crivello* (or any other standard), the fact is that the court did approve that employment in this case,

and Krekeler Strother has represented the debtors in possession for almost a year. Today's question is whether the court should revoke that authorization, which would be appropriate if the firm now has an interest that is materially adverse or if it is currently not disinterested.

If a professional's failure to satisfy §327(a)'s requirements is shown only after the court approves the professional's employment, the proper remedy is the disallowance of compensation, as *Crivello* explains:

> Our interpretation allows § 327(a) to act prospectively as a prerequisite for employment by signaling those professionals who fail to satisfy its dual requirements that they will be disqualified. Once professionals have cleared that threshold, [11 U.S.C.] § 328(c) remains as a retroactive penalty for those professionals whose retention under § 327(a) was improper or who fail to satisfy § 327(a) requirements while working for the estate.

134 F.3d at 839.

Krekeler Strother's material connections arising from the gas-station-sale contracts have now been disclosed, and the firm has disclaimed any right or entitlement it may have had to be paid first from any payments required under those contracts. See ECF No. 136, at 9.[3] Any ongoing risk that the firm has an actual conflict or is not

---

[3] Krekeler Strother's response states that the land contract's provision requiring "that [it] gets paid first became null and void when the case was filed". ECF No. 136, at 9. The court construes this statement to apply with equal force and effect to the consulting agreement's corresponding provision. Compare ECF No. 136-1, at 5, with *id.* at 17. The sale of personal property was by C.A. Pope Inc. to Mr. Ahmad, and neither of the debtors was a party to that transaction. See *id.* at 23. Krekeler Strother should have disclosed its interest in payments under the personal-property bill of sale, but those payments are not property of the estate (except to the extent that the corporation distributed those payments to Mr. Pope or he otherwise has an interest in them as the corporation's owner). Although payments under the bill of sale were completed months before the petition was filed, Krekeler Strother was apparently still holding more than $66 thousand of C.A. Pope Inc.'s funds on the petition date. *Id.* at 23 (indicating prior payment of $10 thousand in earnest money and requiring payment of the balance of $140 thousand in equal installments of $70 thousand due "at the execution of this contract" and "upon Purchaser taking possession of Assets"); *id.* at 3 (attesting that "$140,000 was deposited into the Trust Account of Krekeler Strother, S.C. . . . in accordance with [the Bill of Sale]"); ECF No. 136, at 3 (representing that "[a]s stated in the Bill of Sale, . . . $140,000 was deposited into the Trust Account of Krekeler Strother, S.C."); ECF No. 23,

disinterested will be remedied by an order declaring that the firm has no current or future enforceable right under the gas-station-sale contracts now or in the future. Whether the firm's employment or any of the services it has rendered for the estate were improper before it disclaimed its rights under the contracts is best considered when the firm seeks approval of compensation from the estate.

B

1

The United State trustee also argues, as noted above, that Krekeler Strother should be disqualified for not complying with Rule 2014. Failure to make the disclosures required by the rule "is sufficient grounds to revoke an employment order". *Gellene*, 182 F.3d at 588 (quoting *Crivello*, 134 F.3d at 836). And disqualification may be "justified for lack of adequate disclosure in the Rule 2014 Affidavit, even if it turns out that the professional is in fact disinterested." *Midway Indus. Contractors*, 272 B.R. at 662.

Krekeler Strother plainly failed to comply with Rule 2014. The debtors' application to employ the firm, which the firm filed on the debtors' behalf, took a largely conclusory approach to discussing the firm's interests and connections with the debtors. The application contains no explicit discussion of the gas-station-sale contracts' requirement that payments be made into the firm's trust account and be credited to legal services before paying lienholders or being made available to the debtors. The application's only reference to the gas-station sale is made in the "compensation" section, and it reasonably suggests that the firm's work on the sale had no ongoing consequences:

---

at 19 (disclosing $66,630.76 held "in Krekeler Strother Trust" for "CA Pope Inc."). This order requires an accounting of all funds received by Krekeler Strother under all three contracts. To the extent that Krekeler Strother is holding amounts paid on the bill of sale, the court construes Krekeler Strother's statement that the filing of the petition rendered "null and void" the land contract's provision requiring that the firm be paid first from any amounts paid into its trust account pursuant to that contract to apply with equal force and effect to the bill of sale's corresponding provision. Compare ECF No. 136-1, at 5, with *id.* at 9.

The Debtors retained Krekeler Strother on December 1, 2015, and paid to Krekeler Strother an initial retainer of $1,000. Krekeler Strother represented the Debtors in determining what remedies were available to avoid seizure of real estate by Walworth County Treasurer, filed a Chapter 13 Bankruptcy for the Debtor with this Court on May 13, 2019 as Case No. 19-24703 and represented the Debtor during that case, and prepared all documents related to the sale of real estate of the Debtor via a Land Contract transaction. Prior to the Petition Date, the Debtors paid Krekeler Strother the total amount of $59,718.51 for attorneys' fees earned for services rendered and costs incurred by Krekeler Strother and an additional $1,717.00 for the filing fee for this Case. At the time of the filing of this Case, Krekeler Strother was not owed any monies. As of the date of this Application, the sum of $88,966.01 is currently being held in the Firm's trust account for post-petition services and expenses to be approved by the Court as required under the Bankruptcy Code.

ECF No. 4, at 4, ¶16. The application further states, "Other than as set forth above, there is no proposed arrangement to compensate Krekeler Strother in connection with its representation of the Debtors in this Case." *Id.* at 5, ¶17. About the firm's interests and connections with the debtors the application states, "To the best of the Debtors' knowledge, Krekeler Strother does not hold or represent any interest adverse to the Debtors or their Chapter 11 estate, their creditors, or any other party in interest, and is a 'disinterested person' as that term is defined in Section 101(14) and 327 of the Bankruptcy Code." *Id.* at 3, ¶11.

In addition to this boilerplate, the application refers to "the Sederholm Affidavit" as a source of "greater detail" about the firm's lack of adverse interests and disinterestedness. *Id.* ¶10. The affidavit states, "True and correct copies of the list of the Debtors' creditors and other interested parties reviewed by Krekeler Strother are attached hereto and incorporated herein . . . . **No connections or conflicts were uncovered**." *Id.* at 7, ¶5 (emphasis added). The affidavit offers only rote recitations: "After due and diligent inquiry and reasonable investigation, Krekeler Strother has

concluded that neither Krekeler Strother [nor anyone affiliated with it] has any connections with the Debtors, their creditors, or any parties [in] interest". *Id.* ¶6.

Sederholm's affidavit makes no mention of the gas-station-sale contracts. It does not mention the buyer of the gas station, who was obliged by those contracts to make ongoing payments to the Krekeler Strother trust account, and it does not disclose that those payments were to be applied first for the payment of the firm's fees, then to the debtors' lienholders.

2

The application and supporting affidavit are remarkably deficient. There is no doubt that the contracts providing for the depositing of debtor income into a Krekeler Strother trust account and payment of fees from those deposits before the payment of lienholders is a "connection" between the firm and "the debtor, creditors, [or] any other party in interest" that Rule 2014(a) requires the application to employ to describe. Fed. R. Bankr. P. 2014(a). Similarly, Rule 2014(a) required counsel's supporting affidavit to describe the contracts as "connections with the debtor, creditors, [or] any other party in interest". *Id.* Both documents instead contained boilerplate text stating—falsely—that the firm had no such connections.

Krekeler Strother does not seriously contest that the application and the affidavit failed to comply with Rule 2014. Yet its response to the disqualification motion repeats the incorrect assertion that Krekeler Strother "has no connection with the Debtors". ECF No. 136, at 7; see also *id.* at 12 ("There is nothing in the Gas Station Land Contract that gives payment for [Krekeler Strother's] fees any priority now that the bankruptcy case is filed and payment of fees and costs are governed by the Bankruptcy Code."). Seemingly, even after the United States trustee's motion has highlighted Rule 2014's broad disclosure requirements, the firm remains tone-deaf, arguing almost exclusively that the existence of the contracts does not create an adverse interest because their terms requiring Krekeler Strother to be paid first "became null and void when the case was

filed, [and] even if said provision[s] remained in effect, said provision[s] is merely a restatement of [Krekeler Strother's] Fee Agreement that payment is due upon services rendered." ECF No. 136, at 9. This misses—or ignores—the Rule 2014 point.

The existence of three contracts between one of the debtors (or his wholly owned corporation) and a purchaser of real estate, personal property, and future consulting services in which the purchaser was required to deposit payments into Krekeler Strother's trust account so that disbursement of those funds would be required to first pay Krekeler Strother's fees, then to pay certain liens, and only then be made to the debtor is a fact that might have "influence[d] the court's determination of employment of such professional". *Tomczak*, 283 B.R. at 734. The debtors' schedule G states that the debtors intended to assume the land contract and the consulting agreement. ECF No. 23, at 63. The effect on the administration of the estate of the debtors' assuming those contracts (with their payment restrictions) should have been vetted when the court was considering whether to approve the debtors' employment of Krekeler Strother, a clear third-party beneficiary under those contracts. No such vetting occurred because the debtors and their attorneys failed to make the required disclosures.

The record does not establish that Krekeler Strother purposely concealed its connections to the debtors, the creditors with liens against the gas-station property, and a party in interest (the gas-station purchaser) arising from the contracts. It instead suggests an inexcusable failure of mindfulness by Ms. Sederholm and her firm. Even though the firm drafted the contracts, for the benefit of the debtor and his purchaser, to ensure payment of the firm's fees out of future debtor funds, Ms. Sederholm filed a boilerplate application and a boilerplate affidavit stating that the firm had no connections to the debtors, their creditors, or other parties in interest. She appears simply to have failed to reflect on whether the specific facts about the contracts' terms needed to be disclosed, even if they did not to give the firm an interest adverse to the estate. This was a failure of the professional duty owed the court. As Judge Shapiro put

the point almost two decades ago, "[i]t is the professional's responsibility to make a full, candid, and complete disclosure."[4] *Tomczak*, 283 B.R. at 734.

3

The United States trustee's motion recognizes that disqualification is not the sole remedy for counsel's failure to comply with Rule 2014's requirements. The United States trustee argues that disqualification is appropriate, however, in part because the firm continued to receive the funds into its trust account while this case was pending, rather than depositing those funds in or directing that payments be made into the debtor-in-possession account, and for several months filed monthly operating reports on the debtors' behalf that failed to disclose that it was receiving into and holding in its trust account funds that are property of the estate. ECF No. 131, at 21, ¶¶44–46; ECF No. 143, at 4–5.

This too was improper, a conclusion Krekeler Strother does not contest. The firm and Ms. Sederholm concede that their failure to include the payments in the monthly operating reports was a "mistake" of a type they "strive to avoid" and "regret" making. ECF No. 136, at 6. The firm states, "Although [Krekeler Strother] makes every effort to avoid errors, in a case of this complexity, mistakes happen." *Id.* While this case certainly proves the happening of mistakes, neither Krekeler Strother's response nor Ms. Sederholm's affidavit in support of that response provides any specific facts supporting their assurance that the firm "makes every effort to avoid errors". *Id.* Krekeler Strother's response simply leaves one to wonder how the firm not only failed to disclose the payment-restriction terms of the gas-station-sale contracts in seeking approval of its employment but also repeatedly failed to disclose on the monthly operating reports ongoing payments pursuant to those contracts that were being deposited into a firm

---

[4] Ms. Sederholm did not even make a full disclosure when she filed a supplemental affidavit more than six months later. While that affidavit identifies the payment provisions of the land-sale contract, it makes no mention of the similar provisions in the personal-property-sale and consulting contracts. ECF No. 110.

account. For that matter, one wonders how anything about the "complexity" of this case even begins to explain those oversights. The lack of factual detail—a recurring theme—leaves the explanation, even if credible, unjustified.

These failures afford a sufficient basis to disqualify counsel. That remedy, however, would likely substantially burden the debtors and their bankruptcy estates. This case has been pending for almost a year. The firm has completed sales of estate assets and obtained substantial reductions in the amount of the Wisconsin Department of Revenue's secured claim and the amount of its unsecured claim entitled to priority. As mentioned above, based on Krekeler Strother's disclaiming any benefit under the gas-station-sale contracts, Krekeler Strother does not appear to now hold a disqualifying interest. Given the firm's long involvement with the debtors' bankruptcy case and pre-bankruptcy property transactions, it is likely that creditors and the bankruptcy estates are better served by the firm's continued representation of the debtors in possession. For that reason, the court will not disqualify the firm as a sanction for violating Rule 2014's disclosure requirements. The court will instead impose the other remedies ordered below and may consider the violation as a potential basis for limiting the extent to which it allows the firm compensation from the estate when the firm seeks approval of such compensation.

IV

For these reasons, IT IS ORDERED that the United States trustee's request that Krekeler Strother be disqualified from representing the debtors in possession is denied.

IT IS FURTHER ORDERED that Krekeler Strother is declared to have no enforceable interest now or at any time, including after the closing or dismissal of the debtors' bankruptcy case, in any payments made pursuant to the gas station land contract, bill of sale, or consulting agreement.

IT IS FURTHER ORDERED that by no later than **14 days** after the date of entry of this order Krekeler Strother must

- provide the United States trustee with an accounting, from October 1, 2019, to the petition date, of all funds of the debtors or any related entity received by Krekeler Strother and all compensation from any source paid to Krekeler Strother for services provided to the debtors or any related entity;

- file with the court a supplement clarifying the exact amount of attorney's fees paid to Krekeler Strother before the debtors filed this case and the source of those funds, including whether any funds were paid to it by C.A. Pope Inc., and explaining the discrepancy in the amounts that Krekeler Strother has previously disclosed, see ECF No. 23, at 83–85 (stating that Krekeler Strother received $47,807.01 before filing, including the $1,717 filing fee); ECF No. 4, at 4, ¶16 ("Prior to the Petition Date, the Debtors paid Krekeler Strother the total amount of $59,718.51 for attorneys' fees earned for services rendered and costs incurred by Krekeler Strother and an additional $1,717.00 for the filing fee for this Case."); ECF No. 110, at 2, ¶3 ("Prior to the Petition Date, the Debtors paid Krekeler Strother the total amount of $50,838.41 for attorneys' fees earned for services rendered and costs incurred by Krekeler Strother and an additional $1,717.00 for the filing fee for this Case."); and

- transfer to a debtor-in-possession account that complies with 11 U.S.C. §345 all funds currently being held in its trust account that are property of the estate and file with the court an affidavit evidencing that transfer.

IT IS FURTHER ORDERED that within 14 days of receipt by Krekeler Strother of any payments from Mr. Ahmad (or anyone else) that are property of the estate Krekeler Strother must transfer those funds to a debtor-in-possession account that complies with 11 U.S.C. §345.

IT IS FURTHER ORDERED that the United States trustee's request that the court deny Krekeler Strother compensation and disgorge fees is denied without prejudice with leave to request a disallowance of fees based on this order when Krekeler Strother requests allowance of compensation from the bankruptcy estate.

# # # #